1
2
3
4
5
6
7
8                   UNITED STATES DISTRICT COURT
9              FOR THE EASTERN DISTRICT OF CALIFORNIA
10
11   JERRY KIRKPATRICK,                    No.  2:24-cv-01927-DAD-CKD
12                   Plaintiff,
13          v.                             ORDER GRANTING DEFENDANT'S
                                           MOTION TO DISMISS
14   HOME DEPOT U.S.A., INC.,
                                           (Doc. Nos. 11, 17)
15                   Defendant.
16

17          This matter is before the court on defendant Home Depot U.S.A., Inc.'s motion to dismiss

18   plaintiff's complaint.  (Doc. Nos. 11, 17.)[1]  On January 21, 2025, defendant's motion was taken

19   under submission on the papers pursuant to Local Rule 230(g).  (Doc. No. 22.)  For the reasons

20   explained below, defendant's motion to dismiss will be granted, with leave to amend.

21                              **BACKGROUND**

22          On July 15, 2024, plaintiff Jerry Kirkpatrick filed the complaint initiating this false

23   advertising class action in this court.  (Doc. No. 1.)  In his complaint, plaintiff alleges the

24   following.

25   /////

26

27   _____
     [1]  Defendant initially noticed its pending motion for hearing before the assigned magistrate judge
28   (Doc. No. 11), before it was directed by minute order (Doc. No. 16) to properly re-notice its
     motion before the undersigned.

                                           1

Defendant Home Depot U.S.A., Inc. sells Christmas lights under its private-label brand, Home Accents Holiday Decor.  (Doc. No. 1 at ¶ 1.)  Defendant sells and distributes Home Accents LED Christmas lights (the "Product") online, through its own retail stores, and through third-party retailers.  (*Id.* at ¶ 19.)

Although Christmas lights come in an array of shapes and sizes, there are two standard bulb sizes:  C7 and C9.  (*Id.* at ¶ 2.)  The C9 designation signifies specifications defined by the American National Standards Institute ("ANSI") and other widely accepted norms of the lighting industry.  (*Id.* at ¶ 16.)  Under ANSI C78.79, the "C" means "conical," and the number that follows refers to the diameter or width of the bulb in 1/8ths of an inch.  (*Id.*)  Thus, a C9 light should have a conical bulb with a 9/8ths inch diameter.  (*Id.*)  Industry lighting standards define the dimensions of C7 and C9 bulbs, and the consistency simplifies the consumer's ability to choose the appropriate bulbs and replacement bulbs for their decorations.  (*Id.* at ¶ 2.)  Standard C9 bulbs also have standardized bases, which provide the physical connection between the bulb and the socket.  (*Id.* at ¶ 17.)  These bases also have a specific thread pattern to securely attach to compatible light sockets.  (*Id.* at ¶ 18.)  Any C7 bulb will fit a C7 socket, and any C9 bulb will fit any socket designed for C9 bulbs.  (*Id.*)

Defendant's Product is conspicuously labeled and advertised as containing standard C9 bulbs.  (*Id.* at ¶ 3.)  For in-store purchases, the Product's packaging prominently identifies the bulb shape and size and displays "C9" on the front of the packaging.  (*Id.* at ¶ 24.)  For online customers, the Product page conspicuously identifies the size and shape of the light bulb as C9, both in the Product name and its specifications.  (*Id.* at ¶ 23.)

However, the Product lights are smaller, narrower, have a different base, and do not otherwise meet the dimensions and characteristics of a C9 bulb.  (*Id.*)  The Product bulbs have a maximum width of 1.04 inches, which is narrower than the standard 9/8ths of an inch, or 1.125 inches.  (*Id.* at ¶ 20.)  The Product bulbs are also not as bright as other C9 bulbs and do not have a standard Edison base.  (*Id.*)  The Product lights have a different thread pattern, so they are not compatible with other C9 LED sets or replacement bulbs.  (*Id.*)

/////

2

1     On November 15, 2023, plaintiff Jerry Kirkpatrick, a citizen of Orangevale, California,

2  purchased for personal or household use two sets of the Product at a Home Depot on 6001

3  Madison Avenue in Carmichael, California:  (1) 24 count red/warm white C9 LED Lights, for

4  $16.98; and (2) 50 count warm white C9 LED Lights, for $27.98.  (*Id*. at ¶¶ 5, 26.)  Plaintiff also

5  paid a sales tax of $3.48 on these purchases, bringing his total amount paid for the purchase to

6  $48.44.  (*Id*. at ¶ 26.)  Before buying the Products, plaintiff reviewed the packaging.  (*Id*. at ¶ 27.)

7  Plaintiff saw and relied on misrepresentations that the lights met the C9 standard and that they

8  were "super bright."  (*Id*. at ¶ 26.)  The representations on the package were false and misleading

9  because the lights that plaintiff purchased do not have the dimensions and characteristics of a

10  standard C9 bulb.  (*Id*. at ¶ 28.)  If the Product lights had been accurately labeled, plaintiff and

11  other class members would not have purchased the Product and/or would not have paid as much

12  for it.  (*Id*. at ¶ 29.)  Plaintiff also suffered loss of the use and usefulness of the Product.  (*Id*.)

13     Defendant knows, or at least it should know, that the Product bulbs are mislabeled.  (*Id*. at

14  ¶ 22.)  Yet defendant has sought to capitalize on the consumer demand for standardized

15  Christmas lights by uniformly and falsely labeling its cheaper and smaller LED bulbs as C9.  (*Id*.)

16  Defendant's false labeling allowed it to sell the Product at a higher price and realize sales it would

17  not have otherwise made if the Product were not falsely labeled as having C9 bulbs.  (*Id*. at ¶ 25.)

18  On information and belief, defendant intended for consumers to rely on its false representations.

19  (*Id*. at ¶ 31.)

20     Plaintiff seeks to represent a class of all persons in California who have purchased the

21  Product.  (*Id*. at ¶ 32.)  On behalf of himself and the class, plaintiff brings three claims under

22  California law:  (1) violation of California's Consumers Legal Remedies Act ("CLRA"),

23  California Civil Code §§ 1750, *et seq.*; (2) violation of California's False Advertising Law

24  ("FAL"), California Business & Professions Code §§ 17500, *et seq.*; and (3) violation of

25  California's Unfair Competition Law ("UCL"), California Business and Professions Code

26  §§ 17200, *et seq.*  (*Id*. at ¶¶ 57–90.)  Plaintiff seeks damages as to his first claim and injunctive

27  relief, restitution, disgorgement, and attorneys' fees as to his second and third claims.  (*Id*. at

28  ¶¶ 71, 77–79, 89–90.)  Plaintiff also seeks civil penalties as to his second claim.  (*Id*. at ¶ 79.)

3

1    On October 24, 2024, defendant filed the pending motion to dismiss plaintiff's complaint.

2    (Doc. No. 11.)  Pursuant to the parties' stipulation, (Doc. No. 18), plaintiff filed his opposition on

3    December 20, 2024, and on January 17, 2025 defendant filed its reply thereto.  (Doc. Nos. 20,

4    21.)

5    **LEGAL STANDARD**

6    **A.    Motion to Dismiss Pursuant to Rule 12(b)(6)**

7    The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal

8    sufficiency of the complaint.  *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir.

9    1983).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of

10    sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901

11    F.2d 696, 699 (9th Cir. 1988).  A plaintiff is required to allege "enough facts to state a claim to

12    relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A

13    claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

14    the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v.

15    Iqbal*, 556 U.S. 662, 678 (2009).

16    In determining whether a complaint states a claim on which relief may be granted, the

17    court accepts as true the allegations in the complaint and construes the allegations in the light

18    most favorable to the plaintiff.  *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Love v.

19    United States*, 915 F.2d 1242, 1245 (9th Cir. 1989), *abrogated on other grounds by DaVinci

20    Aircraft, Inc. v. United States*, 926 F.3d 1117 (9th Cir. 2019).  However, the court need not

21    assume the truth of legal conclusions cast in the form of factual allegations.  *U.S. ex rel. Chunie v.

22    Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986).  While Rule 8(a) does not require detailed

23    factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me

24    accusation."  *Iqbal*, 556 U.S. at 678.  A pleading is insufficient if it offers mere "labels and

25    conclusions" or "a formulaic recitation of the elements of a cause of action."  *Twombly*, 550 U.S.

26    at 555; *see also Iqbal*, 556 U.S. at 676 ("Threadbare recitals of the elements of a cause of action,

27    supported by mere conclusory statements, do not suffice.").  Moreover, it is inappropriate to

28    assume that the plaintiff "can prove facts that it has not alleged or that the defendants have

1    violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal.,*
2    *Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

3    **B.    Pleading Fraud Pursuant to Rule 9(b)**

4    A complaint alleging fraud must also satisfy heightened pleading requirements.  Fed. R.
5    Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances
6    constituting fraud or mistake.").  "Fraud can be averred by specifically alleging fraud, or by
7    alleging facts that necessarily constitute fraud (even if the word 'fraud' is not used)."  *Kearns v.*
8    *Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (citing *Vess v. Ciba-Geigy Corp. USA*, 317
9    F.3d 1097, 1107 (9th Cir. 2003)).  "When an entire complaint, or an entire claim within a
10   complaint, is grounded in fraud and its allegations fail to satisfy the heightened pleading
11   requirements of Rule 9(b), a district court may dismiss the complaint or claim."  *Vess*, 317 F.3d at
12   1107.

13   "Rule 9(b) demands that the circumstances constituting the alleged fraud be specific
14   enough to give defendants notice of the particular misconduct . . . so that they can defend against
15   the charge and not just deny that they have done anything wrong."  *Kearns*, 567 F.3d at 1124
16   (citations and internal quotation marks omitted).  To satisfy the particularity standard of Rule
17   9(b), the plaintiff must allege the "'who, what, when, where, and how' of the misconduct
18   charged."  *Id.* (citing *Vess*, 317 F.3d at 1106).

19   **DISCUSSION**

20   Before turning to defendant's motion, the court first considers its unopposed request for
21   judicial notice.  (Doc. No. 12.)

22   **A.    Request for Judicial Notice**

23   In connection with its motion to dismiss, defendant requests that the court take judicial
24   notice of two documents:  (1) Exhibit A, ANSI's "About" webpage,
25   https://webstore.ansi.org/info/about; and (2) Exhibit B, ANSI Standard C78.79:  Nomenclature
26   for Envelope Shapes Intended for Use with Electric Lamps.  (Doc. No. 12.)

27   "In general, websites and their contents may be judicially noticed."  *Threshold Enters.*
28   *Ltd. v. Pressed Juicery, Inc.*, 445 F. Supp. 3d 139, 146 (N.D. Cal. 2020).  Accordingly, the court

will take judicial notice of the webpage submitted as Exhibit A, but "solely for [its] existence and content, and not for the truth of any statements" within. *2Die4Kourt v. Hillair Cap. Mgmt., LLC*, No. 16-cv-01304-JVS-DFM, 2016 WL 4487895, at *1 n.1 (C.D. Cal. Aug. 23, 2016), *aff'd*, 692 F. App'x 366 (9th Cir. 2017); *see also Pac. Overlander, LLC v. Kauai Overlander,* No. 18-cv-02142-KAW, 2018 WL 3821070, at *2 (N.D. Cal. Aug. 10, 2018) ("The Court therefore takes judicial notice of the Defendant's website, the print-outs of the Instagram account, and the print-outs of the Google reviews, but not for the truth of the contents therein."); *United States v. Kane*, No. 2:13-cr-00250-JAD-VCF, 2013 WL 5797619, at *9 (D. Nev. Oct. 28, 2013) ("When a court takes judicial notice of publications like websites and newspaper articles, the court merely notices what was in the public realm at the time, not whether the contents of those articles were in fact true.").  The court will also take judicial notice of Exhibit B, finding that the ANSI standards regarding bulbs in electric lamps, used to aid manufacturers, consumers, and the general public, are the proper subject of judicial notice.  *See Hendrickson v. Wal-Mart Assocs., Inc*., No. 23-cv-00110-AJB-MSB, 2023 WL 6373072, at *2 (S.D. Cal. June 27, 2023) ("As such, because the remainder of Plaintiff's documents derive from undisputed legislative, administrative, and regulatory sources, the Court grants judicial notice for Exhibits (6) and (7)."); *see also Arroyo v. AJU Hotel Silicon Valley LLC, et al.*, No. 20-cv-08218-JSW, 2021 WL 2350813, at *2 (N.D. Cal. Mar. 16, 2021) (taking judicial notice of several exhibits, noting that the court may also consider the exhibits under the doctrine of incorporation by reference because they are documents whose contents are alleged in the complaint and on which the complaint necessarily relies) (citation omitted).

**B.     Defendant's Arguments**

In its pending motion to dismiss, defendant argues that plaintiff's UCL, FAL, and CLRA claims must all be dismissed because plaintiff has not alleged an actionable misrepresentation upon which to base these claims.  (Doc. No. 11 at 9–10.)  In the alternative, defendant argues that plaintiff has not adequately pleaded defendant's knowledge of the misrepresentation or any resulting damage to plaintiff.  (*Id*. at 10–11.)  Finally, defendant argues that to the extent plaintiff

/////

1   seeks injunctive relief in his complaint, he lacks standing to do so and that such relief is

2   unavailable.  (*Id*. at 11.)  The court will address each argument in turn below.

3          1.      Actionable Misrepresentation

4          Defendant first argues that plaintiff "has not alleged an actionable misrepresentation for

5   any of his three claims."  (Doc. No. 11 at 9.)  In opposition, plaintiff argues that defendant's

6   representation on the packaging of the Christmas lights "that the lights met C9 specifications was

7   false and misleading."  (Doc. No. 20 at 9.)

8          "California's UCL, FAL, and CLRA require basic fairness in advertising and permit a

9   civil remedy against those who deceive consumers."  *Whiteside v. Kimberly Clark Corp*., 108

10  F.4th 771, 777 (9th Cir. 2024).  "[T]he California Supreme Court recognized in *Kasky v. Nike,*

11  *Inc*., 27 Cal. 4th 939, 950 (2002) that California's consumer protection laws prohibit not only

12  advertising which is false, but also that which is either actually misleading or which has a

13  capacity, likelihood, or tendency to deceive or confuse the public."  *Roper v. Big Heart Pet*

14  *Brands, Inc*., 510 F. Supp. 3d 903, 917 (E.D. Cal. 2020); *see also Whiteside*, 108 F.4th at 777

15  ("Those laws prohibit not only false advertising, but also advertising that is either actually

16  misleading or which has a capacity, likelihood or tendency to deceive or confuse the public.")

17  (internal citations and quotation marks omitted).

18         To plausibly allege a UCL, FAL or CLRA claim based upon a misrepresentation, plaintiff

19  must allege that he relied on a misrepresentation and suffered injury as a result.  *Barton v. Procter*

20  *& Gamble Co.*, 766 F. Supp. 3d 1045, 1064 (S.D. Cal. 2025) (citing *Mirkin v. Wasserman*, 5 Cal.

21  4th 1082, 1092 (1993)).  "Claims brought under the CLRA, UCL, or the FAL are governed by the

22  'reasonable consumer test.'"  *Roper*, 510 F. Supp. 3d at 916 (citing *Williams v. Gerber Products*

23  *Co*., 552 F.3d 934, 938 (9th Cir. 2008)).  "[T]he reasonable consumer standard requires a

24  probability that a significant portion of the general consuming public or of targeted consumers,

25  acting reasonably in the circumstances, could be misled."  *Whiteside*, 108 F.4th at 777–78

26  (internal quotation marks and citation omitted).  "California courts . . . have recognized that

27  whether a business practice is deceptive will usually be a question of fact not appropriate for

28  decision [at the pleadings stage]."  *Williams*, 552 F.3d at 938–39 (citing *Linear Tech. Corp. v.*

1    *Applied Materials, Inc.*, 152 Cal. App. 4th 115, 134–35 (2007)).  "[I]n federal court, dismissals of

2    UCL, FAL, and CLRA claims at the pleadings stage have 'occasionally been upheld,' but such

3    cases are 'rare.'"  *Whiteside*, 108 F.4th at 778 (quoting *Williams*, 552 F.3d at 939).  "Dismissal is

4    appropriate when 'the advertisement itself [makes] it impossible for the plaintiff to prove that a

5    reasonable consumer [is] likely to be deceived.'"  *Id.*

6         As noted, defendant argues that plaintiff has not alleged facts plausibly showing that

7    defendant misrepresented anything about the Product.  (Doc. No. 11 at 14.)  In opposition,

8    plaintiff argues that defendant has labeled the Product as containing C9 bulbs, but the Product's

9    bulbs do not meet C9 standards.  (Doc. No. 20 at 11–13.)  According to plaintiff, he has alleged

10   that the Product's labeling is a misrepresentation because the Product lights vary from standard

11   C9 lights in terms of their size, their brightness, and their base.  (Doc. No. 20 at 11–13.)  In reply,

12   defendant argues that plaintiff's allegations regarding variations between the Product bulbs and

13   C9 bulbs are de minimis, vague, conclusory, or ignore relevant information.  (Doc. No. 21 at 5–

14   9.)  For example, as to the size of the Product bulbs, defendant argues that the difference between

15   the 1.04-inch wide Product bulb and a 1.125-inch wide standard C9 bulb is "de minimis," and

16   "could not possibly mislead a significant portion of the intended audience of reasonable

17   consumers" because plaintiff has not alleged that a reasonable consumer would know that a C9

18   bulb measures 1.125 inches.  (Doc. No. 11 at 3–4, 15–16.)  Defendant also argues that because

19   there is a cutout in the Product's packaging which permits purchasers to see the Product bulbs

20   before purchasing, "there was no surprise about how wide the caps were."  (*Id.* at 17.)  In

21   opposition, plaintiff argues that there is a "significant difference in the size," and that the Class

22   lights are closer to a C8 size which "is not a standard designation and commands little market

23   recognition."  (Doc. No. 20 at 13.)  Plaintiff also argues that "a reasonable consumer would not

24   necessarily deduce that the lights failed to conform to C9 specifications" from just "a small

25   window revealing only part of the product."  (*Id.*)

26        As stated above, whether a label is deceptive "will usually be a question of fact" absent

27   rare circumstances.  *Williams*, 552 F.3d at 938.  On the other hand, "where a court can conclude

28   as a matter of law that members of the public are not likely to be deceived by the product

packaging, dismissal is appropriate." *Werbel ex rel. v. Pepsico, Inc.*, No. 09-cv-04456-SBA, 2010 WL 2673860, at *3 (N.D. Cal. July 2, 2010). As an example of such circumstances, in *Freeman v. Time, Inc.*, 68 F.3d 285 (9th Cir. 1995), the Ninth Circuit upheld the dismissal of a plaintiff's challenge to a mailer that he argued "falsely represents that the reader has won" a sweepstakes, finding that "when read reasonably and in context," the promotion, which stated multiple times that plaintiff would only win the prize if he had the winning sweepstakes number, "ma[de] no such false representation." *Id.* at 290. Accordingly, district courts have on occasion granted dismissal of UCL, FAL, and CLRA claims brought in relation to product labelling where it is "obvious from the product packaging that no reasonable consumer would believe" the alleged misrepresentation. *Werbel ex rel.*, 2010 WL 2673860, at *3 (finding the plaintiff's allegation that "members of the public are likely to be deceived into believing that Cap'n Crunch derives nutrition from actual fruit" to be "nonsense" where the "packaging clearly states that product is a 'SWEETENED CORN & OAT CEREAL'"); *see also Garza v. Spectrum Brands Pet LLC*, 760 F. Supp. 3d 1039, 1045, 1051 (E.D. Cal. 2024) (dismissing the plaintiff's consumer deception claims, finding that "in reviewing the entirety of the package" which stated that "the dog chews are made with real chicken, pork, & duck" and contained an "ingredients list show[ing] that the seventh, eight, and ninth ingredients out of thirty-seven ingredients are chicken, pork, and duck respectively," a "a reasonable consumer could not be misled to believing that the first ingredient of the dog chews is meat") (appeal pending).

　　　　　Here, however, there are no such similar circumstances that would make it impossible for a reasonable consumer to be misled. As stated above, plaintiff has alleged all of the following. Christmas lights come in two standardized bulb sizes: C7 and C9. (Doc. No. 1 at ¶ 14.) The Product is conspicuously labeled and advertised as containing C9 bulbs. (Doc. No. 1 at ¶ 20.) Plaintiff has included photos in his complaint demonstrating that the Product contains the phrase "C9" printed on the retail packaging, and the online Product page for the Christmas lights includes the phrase "C9" as part of the Product name. (Doc. No. 1 at ¶¶ 23–24.) The Product lights deviate from standardized C9 lights in a number of ways, one being that the Product lights have a maximum width of 1.04 inches, when the standard C9 bulb width is 1.125 inches. (*Id.* at

¶ 20.)  The Product lights "are not compatible with other C9 LED sets or replacement bulbs." (*Id*.)  Before making his purchase, plaintiff "saw and relied on misrepresentations that the lights met the C9 standard," and that "[t]he main features he cared about were the size and shape of the bulb, compatibility with his existing light strings, and brightness."  (*Id*. at ¶¶ 26–27.)  Plaintiff "suffered loss of the use and usefulness of the product," and if the Product had been accurately labeled, he "and other Class members would not have purchased the product and/or would not have paid as much for them."  (*Id*. at ¶ 29.)

It is not at all clear that a reasonable consumer, from reading the entirety of the packaging of the Product and observing the bulbs through the packaging's window, would understand that despite the Product being advertised as containing C9 bulbs, the bulbs do not conform to C9 standards.  Whether a 0.085-inch difference in width is de minimis or serves to meaningfully mislead consumers, whether a window in the packaging would reveal to a reasonable consumer that the bulbs are not as wide as standard C9s, and whether a reasonable consumer knows the width of a standard C9, all are questions of fact, and so do not demonstrate that plaintiff has failed to allege an actionable misrepresentation.  *See Watson v. Crumbl LLC*, 736 F. Supp. 3d 827, 844 (E.D. Cal. 2024) ("[A]t this early stage, the Court cannot say with certainty that a reasonable consumer would not be misled because they would understand that 'Fees' here would not include government-imposed fees.  Defendants are free to revisit this argument following discovery.").  Accordingly, the court rejects defendant's arguments that it is impossible for a reasonable consumer to be misled by defendant's C9 labeling because the difference in bulb width between its Product and standard C9s was either de minimis or clearly apparent to a consumer through the packaging window.

As to the Product's size, defendant also argues that the C9 labelling is not a misrepresentation because "when a Christmas light is described as C9, that does not necessarily mean that it is exactly 1.125 inches . . . ."  (Doc. No. 11 at 17.)  Defendant invokes language from the ANSI standards, attached as Exhibit B to its request for judicial notice, and in particular points to the Customary Units section of that standard, which states that "[t]he unit shall be expressed in eighths of an inch, *with fractions added when necessary*."  (Doc. No. 12-2 at 13)

10

1    (emphasis added).  Defendant argues that this language demonstrates that "fractional units can be

2    added for certain size ranges and rounded upwards" and bulbs can "vary in size and still properly

3    be described as C9." (Doc. No. 11 at 17.)  In opposition, plaintiff argues that "[w]hile ANSI does

4    permit limited deviations, these variances are confined to fractions of 1/16th of an inch or

5    smaller." (Doc. No. 20 at 12.)

6          The court has reviewed the table in the Customary Units section of Exhibit B, and notes

7    that for bulb sizes greater than 0.75 inches, fractional units may be added in the amount of "half

8    of an eighth of an inch," or $1/16^{th}$ of an inch (0.0625 inches). (Doc. No. 12-2 at 13.) Further, the

9    Customary Units section of the standard suggests that fractional units added are reflected in the

10   description of the bulb, meaning that if a bulb were fractionally different in size from a standard

11   C9, even by as little as 0.085 inches, the bulb size may be described with more specificity than

12   simply as a C9.  (*See id.*) (noting as an example a "T2-3/4 bulb" or a "T2.7 bulb" to describe a

13   bulb that is 0.085 inches larger in diameter than a standard T2 bulb).  Accordingly, the court finds

14   defendant's contention, that a bulb that is 0.085 inches smaller than a standard C9 bulb is still

15   properly described as a C9, to be entirely unsupported by the information set out in the ANSI

16   standards (Doc. No. 12-2, Exhibit B).  The court therefore also rejects defendant's argument that

17   plaintiff has not alleged a misrepresentation based on the size of the Product's bulbs because the

18   "language of ANSI C78.79 itself permits some variances in the size of C9 labeled bulbs," (Doc.

19   No. 11 at 17), and concludes that plaintiff has alleged an actionable misrepresentation on the basis

20   that the Product bulbs are described as C9s but do not meet standard C9 sizing.

21          2.    Defendant's Knowledge

22          Defendant next argues that all three of plaintiff's claims fail because plaintiff has not

23   alleged defendant's "knowledge of a defect at the time of sale and its intent to defraud." (Doc.

24   No. 11 at 23.)  In opposition, plaintiff argues that scienter is not a required element of his claims,

25   and that even if it were, his allegations regarding the prominence of the C9 designation on the

26   Product packaging are sufficient to allege defendant's knowledge of the misrepresentation. (Doc.

27   No. 20 at 16.)  In reply, defendant argues that knowledge is a required element because plaintiff's

28   ////

                                        11

1    UCL, FAL, and CLRA claims are "grounded in fraud" and "sound in fraud," and that, as a result,

2    plaintiff must satisfy the particularity requirements of Rule 9(b).  (Doc. No. 21 at 9.)

3         The court agrees that plaintiff's claims sound in fraud and are rooted in a theory of

4    fraudulent misrepresentation, since plaintiff's complaint alleges each element of a common law

5    fraud claim and incorporates those allegations into all three of his claims.  (*See* Doc. No. 1 at

6    ¶¶ 20, 22, 26, 29, 57, 72, 80) (alleging that the Product's packaging describes the light bulbs as

7    being C9s when they are not, that defendant knows the Product is mislabeled and intends for

8    customers to rely on the false representations, that plaintiff did indeed rely on the

9    misrepresentation, and that as a result he suffered the loss of the use and usefulness of the

10   Product); *see also McKinney v. Corsair Gaming, Inc.*, No. 22-cv-00312-CRB, 2022 WL

11   2820097, at *5 (N.D. Cal. July 19, 2022) (finding that the plaintiffs' claims "sound in fraud"

12   where the plaintiffs' allegations "state all of the elements of common law fraud" and "if

13   allegations of fraud were stripped from the FAC, there would be little left of the UCL, FAL, and

14   CLRA claims").  Accordingly, plaintiff's claims are subject to Rule 9(b)'s heightened pleading

15   standards for fraud claims.  *See In re Sony Grand*, 758 F. Supp. 2d 1077, 1088 (2010) (holding

16   that the plaintiffs' UCL, FAL, and CLRA claims "are rooted in theories of fraudulent

17   concealment and fraudulent misrepresentation and therefore must satisfy Rule 9(b)'s heightened

18   pleading requirements"); *McKinney*, 2022 WL 2820097, at *6.

19        "Under Rule 9(b), circumstances constituting fraud or mistake must be stated with

20   particularity, but malice, intent, knowledge, and other conditions of a person's mind, including

21   scienter, can be alleged generally."  *United States v. Corinthian Colleges*, 655 F.3d 984, 996 (9th

22   Cir. 2011) (internal citation and quotation marks omitted).  "This does not mean that conclusory

23   allegations regarding a defendants' knowledge will suffice."  *Punian v. Gillette Co*., No. 14-cv-

24   05028-LHK, 2015 WL 4967535, at *10 (N.D. Cal. Aug. 20, 2015).  Plaintiff's complaint must

25   simply "set out sufficient factual matter from which a defendant's knowledge of a fraud might

26   reasonably be inferred."  *United States ex rel. Anita Silingo v. WellPoint, Inc*., 904 F.3d 667, 679

27   (9th Cir. 2018).  As to the timing of that knowledge, plaintiff must plead defendant's knowledge

28   of fraud before or at the time of plaintiff's purchase.  *Freund v. HP, Inc.*, No. 22-cv-03794-BLF,

1    2023 WL 5184140, at *3 (N.D. Cal. Aug. 10, 2023) ("The parties agree that Plaintiff must plead

2    HP's knowledge of the defect at the time the sale was made."); *see also Klaehn v. Cali Bamboo*

3    *LLC*, No. 21-55738, 2022 WL 1830685, at *2 (9th Cir. June 3, 2022) ("Under Fed. R. Civ. P.

4    9(b), a plaintiff must plead circumstances from which a court can plausibly infer the defendant's

5    knowledge.  So, the question here is whether Plaintiffs pleaded facts about the circumstances of

6    the alleged defect that would allow us to infer that Cali knew about the defect *at the time of sale*

7    *to Plaintiffs*.");[2] *Resnick v. Hyundai Motor Am., Inc.*, No. 16-cv-00593-BRO-PJW, 2017 WL

8    1531192, at *14 (C.D. Cal. Apr. 13, 2017) (rejecting the plaintiffs' argument that "knowledge is

9    not required to prove claims based on Defendants' alleged affirmative misrepresentations," noting

10   that "a manufacturer's representations about a product should not be considered deceptive under

11   the CLRA merely because the product manifests a defect of which the manufacturer had no prior

12   knowledge").

13          As to defendant's knowledge, plaintiff simply alleges that defendant "knows, or at least it

14   should know, that its Home Accents C9 bulbs are mislabeled."  (Doc. No. 1 at ¶ 22.)  In support

15   of defendant's knowledge, plaintiff alleges only that the C9 labeling appearing on the Product is

16   conspicuous.  (*See* Doc. No. 1 at ¶ 23) (alleging that "the product page conspicuously identifies

17   the size and shape of the light bulb (e.g., C7 or C9), both in the product name and its

18   specifications").  However, plaintiff does not allege any facts regarding when defendant became

19   aware that the Product was mislabeled or that the Product bulbs did not meet standard C9

20   specifications—namely, whether that event occurred before or after plaintiff's purchase.

21   Accordingly, the court concludes that plaintiff's complaint does not satisfy the heightened

22   pleading requirements of Rule 9(b).  *See Hauck v. Advanced Micro Devices, Inc*., No. 18-cv-

23   00447-LHK, 2018 WL 5729234, at *6 (N.D. Cal. Oct. 29, 2018) (finding that the plaintiffs failed

24   to sufficiently allege fraud where the class action complaint contained no allegations that the

25   defendant "knew of the Defect before the California Plaintiffs' purchase dates" and therefore

26   "fails to allege [the defendant's] pre-purchase knowledge"); *see also Snyder v. TAMKO Bldg*.

27   _____

28   [2]  Citation to unpublished Ninth Circuit opinions throughout this order is appropriate pursuant to
     Ninth Circuit Rule 36-3(b).

1    *Prods.*, Inc., No. 1:15-cv-01892-TLN-KJN, 2019 WL 4747950, at *11 (E.D. Cal. Sept. 30, 2019)

2    ("These allegations are the type of conclusory allegations that are not sufficient to support the

3    conclusion that Defendant obtained actual knowledge of the specific defect, nor do they come

4    close to establishing that Defendant knew of the defect prior to Plaintiff's purchase."); *In re*

5    *Hydroxycut Mktg. & Sales Pracs. Litig.*, 299 F.R.D. 648, 659 (S.D. Cal. 2014) ("Plaintiffs have

6    not alleged facts that would give rise to an inference of knowledge on the part of the Retailer

7    Defendants that the advertisements regarding the Hydroxycut Products' safety and effectiveness

8    were not true.  The allegations that the Retailer Defendants 'knew or should have known' are

9    conclusory.").  All three of plaintiff's claims will therefore be dismissed.  *See Resnick*, 2017 WL

10   1531192, at *19 (dismissing the plaintiffs' UCL, FAL, and CLRA claims where the plaintiffs

11   "failed to establish that Defendants knew or should have known of any alleged paint defect at the

12   time they advertised or provided information on their website"); *Snyder*, 2019 WL 4747950, at

13   *11 (dismissing the plaintiff's claims brought under the UCL, FAL, and CLRA because the

14   plaintiff did "not sufficiently allege Defendant had actual knowledge of the alleged defects prior

15   to Plaintiff's purchase").

16       In reaching this conclusion, however, the court observes that this failure appears to be a

17   rather "minor deficienc[y]," *Corinthian Colleges*, 655 F.3d at 997, that could be readily cured

18   through the inclusion of additional factual allegations suggesting that defendant knew the

19   Product's bulbs were not C9s before it began selling the Product, perhaps through its own testing

20   of the Product, or because defendant sells numerous other lighting products, including several that

21   do contain actual C9 bulbs.  *See Punian*, 2015 WL 4967535, at *10 ("For instance, an additional

22   basis for defendant's knowledge of a defect could be an allegation that the defendant knew of a

23   defect from internal testing.") (citation omitted).

24       3.    <u>Damages</u>

25       Defendant also argues that plaintiff has not alleged facts plausibly showing that he

26   incurred any damages.  (Doc. No. 11 at 24.)  In opposition, plaintiff argues that he has adequately

27   alleged damages "under the benefit-of-the-bargain theory," because he alleged that he would not

28   have purchased the Product, or paid as much as he did for it, had the Product been accurately

labeled.  (Doc. No. 20 at 17.)  In reply, defendant argues plaintiff's allegations are too broad and conclusory to adequately allege damages.

"Under California law, the economic injury of paying a premium for a falsely advertised product is sufficient harm to maintain a cause of action." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 965 (9th Cir. 2018).  "Thus, a consumer's allegation that "she would not have bought the product but for the misrepresentation . . . is sufficient to allege causation . . . [and] to allege economic injury." *Id*. at 965–66 (citing *Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 330 (2011)).

"To properly plead an economic injury, a consumer must allege that she was exposed to false information about the product purchased, which caused the product to be sold at a higher price, and that she 'would not have purchased the goods in question absent this misrepresentation.'" *Davidson*, 889 F.3d at 966 (quoting *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1105 (9th Cir. 2013)).  Plaintiff has done so here.  Plaintiff alleges that he "saw and relied on misrepresentations that the lights met the C9 standard," that defendant "[sold] its product at a higher price and realize[d] sales it would not have otherwise made," and that "[i]f the Home Accents C9 lights had been accurately labeled, Plaintiff and other Class members would not have purchased the product and/or would not have paid as much for them."  (Doc. No. 1 at ¶¶ 25, 26, 29.)  These allegations are adequate to plead an economic injury at this stage of the litigation and, accordingly, the court finds defendant's argument that plaintiff's claims should be dismissed for failure to adequately allege that he suffered damages to be unpersuasive.  *See Davidson*, 889 F.3d at 966–67 (finding on the basis of similar allegations that the plaintiff had "properly alleged that she was injured by [the defendant's] allegedly false advertising").[3]

---

[3]  In its reply brief, defendant argues that plaintiff failed to respond to its argument that plaintiff "has no claim for punitive damages," and the court should therefore "strike this claim for relief." (Doc. No. 21 at 12.)  In reviewing defendant's pending motion, the sole argument advanced therein regarding damages is that plaintiff's allegations as to damages are conclusory; defendant advances no argument concerning pleading requirements for punitive damages specifically or concerning the availability of punitive damages under the UCL, CLRA, or FAL.  Accordingly, the court rejects defendant's request in its reply brief that the court strike plaintiff's claim for punitive damages.

1          4.      Equitable Relief

2          Finally, defendant argues that plaintiff has not adequately pleaded facts supporting his

3   request for equitable relief.  (Doc. No. 11 at 25.)  Defendant observes that "Plaintiff has not

4   alleged that he intends to purchase the Products again," and "[w]ithout such allegations, Plaintiff

5   has no standing to assert a claim for equitable relief . . . ."  (Doc. No. 11 at 26.)  In opposition,

6   plaintiff argues that a "previously deceived consumer [may] have standing to seek injunctive

7   relief under certain circumstances" and that plaintiff "cannot easily determine whether Home

8   Depot's future packaging is accurate."  (Doc. No. 20 at 18–19.)  In reply, defendant reiterates that

9   plaintiff has "not alleged that he intends to buy the same holiday lights at any time in the future—

10  let alone that he will do so imminently—so his speculation about what future packaging may say

11  is irrelevant."  (Doc. No. 21 at 13.)

12         The court finds defendant's argument to be persuasive.  It is true, as plaintiff points out,

13  that the Ninth Circuit has held that "a previously deceived consumer may have standing to seek

14  an injunction against false advertising or labeling, even though the consumer now knows or

15  suspects that the advertising was false at the time of the original purchase."  *Davidson*, 889 F.3d

16  at 969.  Nonetheless, one's standing to do so depends on whether "the consumer may suffer an

17  'actual and imminent, not conjectural or hypothetical' threat of future harm."  *Id.* (quoting

18  *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)).  In *Davidson*, the plaintiff sued a

19  manufacturer of personal cleansing wipes, alleging that the manufacturer falsely advertised the

20  wipes as 'flushable' in violation of the UCL, FAL, and CLRA when they were not, in fact,

21  flushable.  *Id.* at 961.  Critical to the court's holding that plaintiff had standing to seek injunctive

22  relief in that case were the allegations appearing in the complaint that the plaintiff:

23              continues to desire to purchase wipes that are suitable for disposal in
                a  household  toilet;  would  purchase  truly  flushable  wipes
24              manufactured by [Kimberly-Clark] if it were possible; regularly
                visits stores . . . where [Kimberly-Clark's] 'flushable' wipes are sold;
25              and is continually presented with Kimberly-Clark's flushable wipes
                packaging but has no way of determining whether the representation
26              'flushable' is in fact true.

27  *Id.* at 970–71.  Here, plaintiff has not presented any comparable allegations in his complaint that

28  he has any desire to again purchase the Product or will in fact do so.  Because plaintiff "does not

16

1    allege the threat of future harm that *Davidson* held is required for Article III standing in a case

2    seeking public injunctive relief," *Stover v. Experian Holdings, Inc.*, 978 F.3d 1082, 1087 (9th Cir.

3    2020), plaintiff's argument that he has standing to pursue injunctive relief in this case necessarily

4    fails. *See Mendoza v. Electrolux Home Prods., Inc.*, No. 1:20-cv-01133-DAD-BAM, 2022 WL

5    4082200, at *8 (E.D. Cal. Sept. 6, 2022) (finding that the plaintiffs lacked standing to seek

6    injunctive relief where they brought CLRA, UCL, and Song-Beverly Act claims regarding their

7    purchase of microwaves but "d[id] not allege that they have any intention of repurchasing the

8    Microwaves").[4]

9    **C.    Leave to Amend**

10    Leave to amend should be granted "freely" when justice so requires. Fed. R. Civ.

11    P. 15(a). The Ninth Circuit maintains a policy of "extreme liberality generally in favoring

12    amendments to pleadings." *Rosenberg Bros. & Co. v. Arnold*, 283 F.2d 406, 406 (9th Cir. 1960).

13    Generally, dismissal without leave to amend is proper only if it is clear that "the complaint could

14    not be saved by any amendment." *Intri-Plex Techs. v. Crest Grp.*, 499 F.3d 1048, 1056 (9th Cir.

15    2007) (citation omitted); *see also Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th

16    Cir. 1989) ("Leave need not be granted where the amendment of the complaint . . . constitutes an

17    exercise in futility . . . .").

18    In his opposition to the pending motion to dismiss, plaintiff requests leave to amend his

19    complaint should the court grant defendant's motion. (Doc. No. 20 at 21.) It is not at all clear

20    that permitting plaintiff leave to amend to attempt to cure the pleading deficiencies of his

21    ─────────────

22    [4]  The court notes that if plaintiff could in good faith allege that he would purchase the Product
from defendant again in the future if the Product did in fact contain C9 bulbs, but he would be
unable to rely on the Product's C9 labeling at that time, plaintiff would likely satisfy the

23    requirements of demonstrating his standing for equitable relief. *See Clark v. Eddie Bauer LLC*,
No. 21-35334, 2024 WL 177755, at *2–3 (9th Cir. Jan. 17, 2024) (relying on its decision in

24    *Davidson* in concluding that the plaintiff had standing to pursue injunctive relief where she
alleged that she "would shop at one of Eddie Bauer's Oregon Outlet Stores again if she could

25    have confidence regarding the truth of Eddie Bauer's prices and the value of its products"); *Carey
v. J.A.K.'s Puppies, Inc.*, No. 5:21-cv-02095-WLH-DTB, 2025 WL 1718082, at *3 (C.D. Cal.

26    June 3, 2025) (denying the defendant's motion to dismiss the plaintiffs' request for injunctive

27    relief where the plaintiffs alleged that they will likely acquire another dog in the future, they
desire to purchase rescue puppies, but they will be unable to rely on the defendant's

28    representations that its puppies are indeed rescue puppies).

1  complaint discussed above would be futile, and defendant does not argue that leave to amend

2  should be denied.  Therefore, the court will grant plaintiff leave to amend his complaint to include

3  additional allegations, in particular regarding defendant's knowledge of the alleged

4  misrepresentation and supporting plaintiff's request for equitable relief, if plaintiff can do so in

5  good faith.  Defendant is encouraged to take heed of the court's analysis set forth above as to the

6  sufficiency of plaintiff's allegations regarding actionable misrepresentation and damages in

7  formulating its response to any amended complaint submitted by plaintiff.

8  **CONCLUSION**

9  Accordingly,

10  1.    Defendant's request for judicial notice (Doc. No. 12) is GRANTED;

11  2.    Defendant's motion to dismiss plaintiff's complaint (Doc. Nos. 11, 17) is

12  GRANTED, with plaintiff being granted leave to amend as to all of his causes of

13  action;

14  3.    Plaintiff shall file his first amended complaint, or alternatively, a notice of his

15  intent to not file a first amended complaint, within twenty-one (21) days from the

16  date of entry of this order; and

17  4.    The court hereby RESETS the Initial Scheduling Conference in this matter for

18  October 27, 2025 at 1:30 p.m. before District Judge Dale A. Drozd by Zoom.

19  IT IS SO ORDERED.

20  Dated:  __**July 19, 2025**__                    _____

21                                                 DALE A. DROZD

22                                                 UNITED STATES DISTRICT JUDGE

23

24

25

26

27

28